**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| LINETEC SERVICES, LLC and CENTURI GROUP, INC., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 4:26-cv-08224 |
| | § | |
| AMP UTILITY COMPANY, LLC, MICK DUBEA, BRENT HOOPER, and CORY CLOSE, | § | |
| | § | |
| Defendants. | § | |

**DECLARATION OF CORY CLOSE**

1. My name is Cory Close. I am over eighteen years of age and competent to make this declaration. The facts stated in it are within my personal knowledge and are true and correct.

2. I am a defendant in this case. I make this declaration in opposition to Plaintiffs' Emergency Motion for Temporary Restraining Order (Dkt. 4) and Plaintiffs' Emergency Motion for Expedited Discovery (Dkt. 3).

3. I live in Alexandria, Louisiana. I worked for Linetec Services, LLC ("Linetec") as its Chief Financial Officer from May 2016 until Linetec terminated my employment by letter dated September 23, 2026.

4. Linetec has offices in Alexandria located at 6411 Masonic Drive. It was headquartered there initially, but at some point the headquarters transitioned to Houston, Texas. Throughout my employment, though, I always worked primarily from Alexandria. In fact, my Employment Agreement with Linetec, dated November 30, 2018, says that I would not be required to relocate from Alexandria to perform my job. Ever since the COVID pandemic, I have primarily worked from a home office rather than from the Linetec offices on Masonic Drive.

5. During 2026 and until September 23, 2026, I reported formally to Brent Hooper, Linetec's Chief Executive Officer. Mick Dubea, Linetec's President, also directed my work. Mr. Dubea left the company in late June 2026. Mr. Hooper was terminated the same day that I was.

6. As CFO, I regularly prepared financial reports and analyses at the request of both Mr. Hooper and Mr. Dubea.

7. When I was terminated on September 23 (and despite the fact that the termination letter said it wouldn't be effective until the following day), my access to Linetec's systems was also terminated. I no longer had access to my Linetec email, its network, or its remote-access systems. I have had no access to Linetec's systems since. I still have my Linetec-assigned laptop and am planning to return it as described further below. Other than copying (but not deleting) some personal files that were kept on it, I have not accessed the laptop since my termination.

8. I have read the Complaint filed against me in this case and the allegations that I participated in any scheme to move Linetec's business to AMP Utility Company, LLC ("AMP"), or that I disclosed Linetec's information for that purpose, are simply false.

9. I have never been employed by AMP. I have never worked for AMP, consulted for AMP, or provided services to AMP. I have never owned any interest in AMP, and no one has ever offered or promised me an ownership interest in AMP. I have never received any payment or other compensation from AMP.

10. I was not part of any plan to leave Linetec or to move Linetec's business, employees, or customers to AMP or to any other company. I have not solicited any Linetec employee to leave Linetec. I have not solicited any Linetec customer to move its business away from Linetec.

11. I did not attend a meeting at Mr. Dubea's home in Vail, Colorado, on June 19, 2024. I did not attend any of the meetings described in ¶ 12 of Roy Harrington's declaration, whether in Atlanta, Dallas, Houston, Philadelphia, or San Antonio.

12. I have never had a "burner" phone. I have never been offered a burner phone. Nobody has ever suggested that I have a burner phone. Nobody has suggested that I use secret messaging applications like Signal to privately communicate with other people in the manner alleged in ¶ 90 of the Complaint. I have never used Signal and wasn't even familiar with it until I read the Complaint.

13. I want to be absolutely clear about this. I have never used Signal. I have never downloaded or used any messaging app at the suggestion of Mr. Hooper, Mr. Dubea, or Roy Harrington. I have never used disappearing-message or auto-delete settings, or any other means, to avoid keeping a record of any of my communications. Mr. Harrington never showed me any such apps or suggested that I use them for any purpose.

14. I have not given Linetec's pricing, bid, customer, employee-compensation, or other confidential information to AMP, to Mr. Dubea for AMP's use, or to anyone outside Linetec's management. Mr. Harrington states in ¶ 13 of his declaration that I am 'still actively funneling pricing information to Dubea and AMP to allow them to undercut pricing for customer bids.' That is false. I have never given Linetec pricing or bid information to Mr. Dubea or anyone else for AMP's use, and since September 23, 2026, I have had no access at all to Linetec's pricing or bid information. I haven't done it in the past, and I am not "actively" doing it now.

15. The "Rising and Falling Star Report" referred to in ¶ 21 of Dominic Defino's declaration is an actual report that I prepared periodically for management as part of my duties as Linetec's CFO. This is a report that summarized revenue and profitability at the crew level. At

one point it was prepared on a monthly basis, but it eventually came to be the sort of thing I'd be asked to prepare less frequently, typically quarterly. It is the kind of financial analysis I regularly prepared as Linetec's CFO and it was only ever prepared for the review and use of Linetec's management.

16. With respect to the March version of the report, that is something I prepared and it is something I sent to Mr. Dubea in his capacity as Linetec's President at a time when he was still employed with Linetec. While I don't recall what email address I sent it to, Mr. Dubea would sometimes ask me to send him things to his personal email address rather than his Linetec address. There was a reason for this. My understanding is that Mr. Dubea used a personal laptop and Linetec had a policy about not permitting Linetec email accounts to be configured on personal laptops. And so there were times when Mr. Dubea would just ask me to send communications to his personal email address rather than his Linetec one. Over the ten years that both Mr. Dubea and I were together at Linetec, I estimate this occurred hundreds of times. I can say this with certainty, though: I did not send this report (or any other report or compilation of data) to Mr. Dubea after he left the company. I sent it to him at a time when he was the company President; when he was over me in the hierarchy; and when part of my job was to provide him with financial information and reports at his request.

17. I certainly did not send the report to AMP or to anyone outside of Linetec's management.

18. Mr. Defino also refers in his declaration to a "printed 2025 version" of the report "found with markings for Dubea, AMP, and Hooper." He says that this document "was also recently found." I have no idea what this document is, what those alleged markings consist of or what they mean, where it supposedly was found (or by whom), or what it has to do with me.

19. I have never created, drafted, contributed to, or seen any business plan for AMP. I have never created, drafted, contributed to, or seen any document that allocates or reflects an ownership interest in AMP for any person. I have no knowledge of what the allocation of ownership in AMP consists of or looks like. I have never prepared or helped prepare any employee compensation plan for AMP, whether modeled on Linetec's compensation plans or otherwise. The statements in ¶¶ 7 and 13 of Mr. Harrington's declaration that I created such a business plan, including one in an office in Alexandria, are simply false.

20. I do not have any hard-copy of Linetec's documents.

21. I still have the laptop computer Linetec issued to me. It contains some of my personal files, and it may also contain Linetec information. Since my termination, I have not used the laptop to access, open, copy, or send any Linetec information. Other than as described in ¶ 7, above, I have kept it in the condition it was in when my employment ended, and I will continue to preserve it. Given the circumstances I now find myself in, I will continue to hold onto the computer in the same condition until my lawyer makes arrangements with Linetec's counsel for us to return it in a controlled manner.

22. Until my termination, I had access to Linetec email on my personal cell phone. After my termination that access was removed. Because I kept getting pop-up messages to provide a new password for that no-longer-accessible email account I ended up just deleting the account from the phone altogether.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Rapides Parish, Louisiana, on 10/01/2026.

Cory Close
Cory Close (Oct 1, 2026 22:58:34 CDT)

Cory Close

# Declaration of Cory Close

Final Audit Report 2026-10-02

| | |
|---|---|
| Created: | 2026-10-02 |
| By: | Andrew Golub (asgolub@dowgolub.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAw-sfcK5j6gGqzkoQR6wGQPmaQMJXfBbC |

## "Declaration of Cory Close" History

Document created by Andrew Golub (asgolub@dowgolub.com)
2026-10-02 - 0:02:59 AM GMT

Document emailed to Cory Close (cclose1997@gmail.com) for signature
2026-10-02 - 0:03:03 AM GMT

Email viewed by Cory Close (cclose1997@gmail.com)
2026-10-02 - 3:47:02 AM GMT

Document e-signed by Cory Close (cclose1997@gmail.com)
Signature Date: 2026-10-02 - 3:58:34 AM GMT - Time Source: server - Signature Appearance Selected: TYPE

Agreement completed.
2026-10-02 - 3:58:34 AM GMT